THE STATE OF OHIO, APPELLEE, *v.*
CRIDER, APPELLANT.

(Nos. 11277 and 11288—Decided
February 8, 1984.)

*Lynn Slaby,* prosecuting attorney,
for appellee.

*Peter T. Cahoon,* for appellant.

GEORGE, J. The defendant, Robert
T. Crider, appeals from a conviction of
the crimes of rape, aggravated robbery,
and two counts of aggravated burglary.

In the early morning hours of
September 9, 1982, Crider broke into a
home in Cuyahoga Falls. When the occu-
pant appeared, Crider bound and blind-
folded her. He then raped the victim.
After raping her, Crider stated that in
the future she would know him because
he would call her "doll baby." After
Crider left, the victim telephoned her
neighbor who, in turn, called the police.
The victim continued to cooperate with
the police by making a statement and
describing the rapist.

Several days after the incident,
Crider returned. He grabbed the victim
from behind and ran a knife across her
arm. He then told her she had been a
"bad girl" and he called her "doll baby."
As the police investigation continued,
the victim was shown an array of
photographs. She pointed out Crider as
the man who had raped her. Crider was
subsequently indicted for rape, ag-
gravated robbery, and two counts of ag-
gravated burglary. After a jury trial,
Crider was found guilty as charged and
sentenced.

Assignment of Error 1

"The trial court committed prej-
udicial error by overruling defendant-
appellant's motion for acquittal as to the
charge contained in count four of the in-
dictment herein, which motion was
made at the close of the state's case."

One count of aggravated burglary
was based upon the underlying felony of
intimidation of a witness, namely, the
victim. R.C. 2921.03. Crider argues that
at the time of the intimidation there
were no criminal proceedings pending
and thus the victim was not a "witness."
The state argues that the victim, who
was the object of Crider's original
criminal conduct, was intimidated by
him when he returned to the victim's
home. At that time, the victim was a
witness within the purview of R.C.
2921.03. This court agrees.

R.C. 2921.03(A) provides:

"No person, knowingly and by force
or by unlawful threat of harm, shall at-
tempt to influence, intimidate, or hinder

a * * * witness in the discharge of his duty."

Crider refers to R.C. 2939.25, where the word "witness" is defined. However, the use of this definition is expressly limited to R.C. 2939.25 to 2939.29, and it is not helpful here.

In a 1961 bribery case, *State* v. *Lieberman* (1961), 114 Ohio App. 339 [18 O.O.2d 25], the appellate court approved a jury instruction which defined the word "witness." The trial court defined a "witness" as a person who "did in fact have factual knowledge which was pertinent or relevant to * * * proceedings, and * * * if * * * [the person] had such knowledge, * * * [the person] was a 'witness,' " even though not subpoenaed to testify. *Id.* at 342. The Supreme Court refused to accept the matter for consideration. *State* v. *Lieberman* (1961), 172 Ohio St. 478 [17 O.O.2d 464].

The *Lieberman* definition was generally followed by this court in an intimidation case, *State* v. *Hudson* (June 30, 1982), Summit App. No. 10491, unreported. In *Hudson* a witness was defined as "a person with factual knowledge relevant to the issues involved in the proceedings." An examination of the intimidation statute does not offer an express definition of the word "witness." However, rules of statutory construction provide that a word is to be read in context and construed according to its common usage. R.C. 1.42. Webster's Third New International Dictionary, Unabridged (1961), provides the following definition of the word "witness":

"* * * one that is cognizant of something by direct experience: one who beholds or otherwise has personal knowledge of something * * * see earwitness, eyewitness * * *."

The intimidation statute was designed to protect those people who saw, heard or otherwise knew, or were supposed to know, material facts about the criminal proceeding. Once a person becomes possessed of such material facts, he likewise becomes a "witness" within the meaning of R.C. 2921.03, and subject to its protection.

It would be ludicrous to hold that the victim, who was intimidated, is not a "witness" under R.C. 2921.03(A) because the victim had not yet had the opportunity to identify the offender, the prosecution had not yet issued a complaint against him, or the police had not yet apprehended him to commence proceedings. The accused, if guilty, generally knows the witnesses who can testify against him before as well as after they are known to the police and the prosecuting attorney. Therefore, the victim became a "witness" at the time of the original victimization and within the ambit of protection offered by R.C. 2921.03(A).

Crider further argues that the evidence is insufficient to identify him as the intimidator. However, the victim testified that she recognized the voice as being Crider's. Furthermore, he referred to the victim as "doll baby" as he promised he would do. Thus, the evidence is sufficient to support the court's denial of Crider's motion for acquittal.

### Assignment of Error 2

"The trial court committed prejudical error, and violated defendant-appellant's right to due process as guaranteed by the United States Constitution, by failing to grant a voir dire of the jury as requested by defendant-appellant's counsel after it was learned that a radio broadcast during trial had referred to defendant-appellant's prior criminal record."

During trial, the court was informed that a radio news report was given concerning Crider's trial. Defense counsel moved the court at that time to voir dire the jury to determine if any jurors had heard the news report. The court denied the motion.

The record reveals that the court ad-

monished the jury not to listen to news reports concerning the trial. There is no indication in the record that the jury failed to obey this instruction. Furthermore, aside from Crider's allegations in his brief, there is nothing in the record that reveals the contents of the news broadcast. Thus, the ruling of the court has not been shown to be prejudicial to Crider. This assignment of error is overruled.

### Assignment of Error 3

"The trial court committed prejudicial error by denying defendant-appellant's motion to suppress identification testimony of the prosecuting witness herein."

Crider argues that the photographic identification by the victim should have been suppressed as being unduly suggestive. Crider does not argue that the photographs themselves were suggestive, or that they were displayed in an improper matter. Rather, his argument is based on the fact that after the victim pointed out Crider as her attacker she became very nervous and stated that she was fifty percent certain of the identification. Crider also objects to the fact that the identification occurred over three months after the crime.

Based on the totality of the circumstances, this identification procedure was not improper. *Neil* v. *Biggers* (1972), 409 U.S. 188. It is quite understandable that the victim of a rape would react very nervously upon viewing a photograph of her attacker, especially if she had been victimized by the attacker on two occasions. Furthermore, the fact that the identification occurred over three months after the rape does not in itself make the identification inadmissible. Again, the totality of the circumstances controls. In *Neil* v. *Biggers, supra,* the questioned identification occurred seven months after the crime. Yet, the court upheld the ad-

missibility of the out-of-court identification.

Accordingly, the totality of the circumstances here do not indicate that the identification was unlawfully unreliable. Therefore, the assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.